# EXHIBIT J

**IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA**

AMANDA LEBERMAN and
KARLE LYONS,

       *Plaintiffs*,

   vs.

ZAAL VENTURE CORP., US GHOST
ADVENTURES, LLC, and LANCE ZAAL,

       *Defendants*.

CIVIL DIVISION


Case No.: 12796-2023



**COMPLAINT IN CIVIL ACTION**

Filed on Behalf of Plaintiffs:
Amanda Leberman and Karle Lyons

Counsel of Record for Plaintiffs:
**THE WORKERS' RIGHTS
LAW GROUP, LLP**

Kyle H. Steenland, Esq.
Pa. ID No. 327786

Erik M. Yurkovich, Esq.
Pa. ID No. 83432

Cynthia A. Howell, Esq.
Pa. ID No. 325662

The Workers' Rights Law Group, LLP
Foster Plaza 10
680 Andersen Drive, Suite 230
Pittsburgh, PA 15220

Telephone:    412.910.9592
Fax No.:     412.991.7510
kyle@workersrightslawgroup.com
erik@workersrightslawgroup.com
cynthia@workersrightslawgroup.com

## **NOTICE TO DEFEND**

**YOU HAVE BEEN SUED IN COURT.** If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this Complaint and Notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the Complaint or for any other claim or relief requested by the plaintiffs. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICE TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE:

Lawyer Referral Service
P.O. Box 1792
Erie, PA 16507
Telephone: (814) 459-4411
Hours: Mon. – Fri. 8:30 a.m. to 3:00 p.m.

## IN THE COURT OF COMMON PLEAS OF ERIE COUNTY, PENNSYLVANIA

AMANDA LEBERMAN and
KARLE LYONS,

          *Plaintiffs*,

    vs.

ZAAL VENTURE CORP., US GHOST
ADVENTURES, LLC, and LANCE ZAAL,

          *Defendants*.

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 12796-2023

## COMPLAINT IN CIVIL ACTION

Plaintiffs, Amanda Leberman ("Ms. Leberman") and Karle Lyons ("Ms. Lyons") (collectively, Ms. Leberman and Ms. Lyons are referred to as "Plaintiffs"), by and through the undersigned counsel, now file this Complaint in Civil Action, against Defendants, Zaal Venture Corp. ("ZVC"), US Ghost Adventures, LLC ("USGA"), and Lance Zaal ("Mr. Zaal") (collectively ZVC, USGA and Mr. Zaal are referred to as "Defendants"), averring as follows:

## PARTIES

1.      Ms. Leberman is an adult individual who resides in Erie, Pennsylvania 16509.

2.      Ms. Lyons is an adult individual who resides in Erie, Pennsylvania 16505.

3.      ZVC is a foreign business corporation incorporated in the State of Virginia with a registered business address of 1006 Richmond Road, Suite 300, Williamsburg, Virginia 23185.

4.      USGA is registered in the Commonwealth of Pennsylvania as a foreign limited liability company formed in the State of Virginia with a registered address of 452 Baltimore Street, Gettysburg, Pennsylvania 17325.

5.      Mr. Zaal is the owner and operator of ZVC and USGA, and at all times relevant hereto managed their operations, and specifically Mr. Zaal effectuated the unlawful wage and

timekeeping practices complained of herein.

## JURISDICTION AND VENUE

**A.  This Court Possesses Subject Matter Jurisdiction Pursuant to 42 Pa.C.S. § 931(a).**

6.      Jurisdiction is proper in this Court pursuant to 42 Pa.C.S. § 931(a) which imbues the courts of common pleas with unlimited original jurisdiction over all actions cognizable by law.

7.      Plaintiffs bring this lawsuit asserting violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA"), the Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.* (the "MWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* (the "WPCL"), and common law Unjust Enrichment.

8.      Accordingly, jurisdiction is properly vested in this Court over the instant matter as Plaintiffs advance statutory and common law causes of action within the jurisdiction of the courts of common pleas, and no other court has exclusive jurisdiction over the claims and/or causes of action asserted herein.

**B.      The Court of Common Pleas of Erie County is the Appropriate Venue for this Matter Pursuant to Pa.R.C.P. 2179(a)(2).**

9.      Venue is proper in the Court of Common Pleas of Erie County pursuant to Pa. R.C.P. 2179(a)(3) because Erie County, Pennsylvania is the geographic jurisdiction wherein the causes of action alleged herein transpired and arose.

10.      Specifically, Pa.R.C.P. 2179(a) provides where an action against a corporation may be brought and delineates specifically where:

(1) The registered office or principal place of business of the corporation or similar entity is located;
(2) The corporation or similar entity regularly conducts business;
(3) The cause of action arose;
(4) A transaction or occurrence took place out of which the cause of action arose;
(5) The property or part of the property, which is the subject matter of the action, is located provided that equitable relief is sought with respect to the property.

Pa.R.C.P. 2179(a).

11.    Defendants regularly conduct business within Erie County in the course of its operations in satisfaction of Pa.R.C.P. 2179(a)(2).

12.    Venue within Erie County is therefore proper pursuant to Pa.R.C.P. 2179(a)(2).

**C.    This Court of Common Pleas of Erie County May Exercise Personal Jurisdiction Over Defendants Pursuant to 42 Pa. C.S. § 5301(a)(2).**

13.    This Court may exercise personal jurisdiction over Defendants pursuant to 42 Pa. C.S. § 5301(a)(2), and this Court may exercise jurisdiction over Defendants in compliance with the Due Process Clause of the United States Constitution.

14.    Personal jurisdiction is proper over a defendant if the defendant is a registered Pennsylvania entity and has thus "consented" to the exercise of general personal jurisdiction pursuant to 42 Pa. C.S. § 5301. *Aetna Inc. v. Kurtzman Carson Consultants, LLC*, No. 18-470, 2019 BL 114021, at *5 (E.D. Pa. Mar. 29, 2019) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985); *Bane v. Netlink, Inc.*, 925 F.2d 637, 641 (3d Cir. 1991)).

15.    Further, 42 Pa. C.S. § 5301 states: "The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person."  42 Pa. C.S. § 5301(a).  This definition is expanded to "corporations" pursuant to 42 Pa. C.S. § 5301(a)(2) which provides:

> Corporations.—
> (i) Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
> (ii) Consent, to the extent authorized by the consent.
> (iii) The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. C.S. § 5301(a).

16.    As discussed above, USGA is a foreign limited liability company registered under the laws of the Commonwealth of Pennsylvania and accordingly subjected itself to the general jurisdiction of Pennsylvania's tribunals pursuant to 42 Pa. C.S. § 5301(a)(2)(i).

17.    This Court may exercise personal jurisdiction over Defendant ZVC because ZVC routinely and regularly conducts and solicits business in the Commonwealth of Pennsylvania and accordingly subjected itself to the general jurisdiction of Pennsylvania's tribunals pursuant to 42 Pa. C.S. § 5301(a)(2)(iii).

18.    Further, as averred more fully below, Defendants ZVC and USGA violated numerous statutory provisions of Pennsylvania law and Pennsylvania common law, and each and every one of the events giving rise to Defendants' unlawful conduct, including the harm that Plaintiffs sustained therefrom, occurred in Pennsylvania.

19.    As such, this Court, at bare minimum, may exercise personal jurisdiction over Defendants ZVC and USGA as each has the required minimum contacts with this forum for purposes of Pennsylvania's long-arm statute.

20.    42 Pa. C.S. § 5301(a) further provides general jurisdiction over "individuals" where that individual possesses a "presence in this Commonwealth at the time when process is served" or as to individuals who possess a "domicile in this Commonwealth at the time when process is served."

21.    Upon information and belief, Mr. Zaal maintains a domicile located within the geographic confines of Pennsylvania and will be located within Pennsylvania at the time of service of the instant complaint.

22.    Accordingly, Defendants may be personally brought before this Court pursuant to 42 Pa. C.S. § 5301(a).

## **FACTUAL BACKGROUND**

23.    For salient context, USGA, which for all intents and purposes basically operates as a subsidiary of ZVC, is an entertainment venue which provides ghost tours and experiences across the United States' "most haunted cities."

24.    Amongst other service offerings, USGA provides group tours to a variety of national destinations wherein a guide and transportation are provided to a group of individuals (the "Ghost Tours").

25.    In October 2022, Ms. Leberman was hired by Defendants in the role of "Content Creator."

26.    At the outset of Ms. Leberman's employment, she was compensated on an hourly basis of $20.19.

27.    At all times relevant herein, Ms. Leberman's hourly pay scheme and duties rendered her "non-exempt" from the provisions of the FLSA and the MWA and thereby entitled her to an overtime rate of pay.

28.    On or about January 13, 2023, Defendants hired Ms. Lyons as a "Content Creator" and to work alongside Ms. Leberman for documenting the Ghost Tours.

29.    Ms. Lyons was similarly paid $20.00 per hour worked.  Further, Ms. Lyons' pay scheme and role entitled her to overtime wages pursuant to the FLSA and the MWA.

**A.    Defendants Failed to Compensate Plaintiffs at an Overtime Rate of Pay Pursuant to the FLSA and the MWA.**

30.    From April 2023 to July 2023, Plaintiffs' workload increased dramatically, and Plaintiffs began working more than 40 hours per week at the express direction of Mr. Zaal.

31.    Demonstrative of the intensive escalation of their role, Mr. Zaal routinely demanded Plaintiffs to work from 8 a.m. to 2 a.m. the following day with little room for rest or reprieve.

7

32.     In the event Plaintiffs were momentarily unavailable and did not immediately respond to Mr. Zaal, Mr. Zaal tasked Defendants' Human Resources Department with continuously calling Plaintiffs in a harassing fashion until Plaintiffs responded to Mr. Zaal's demands.

33.     Plaintiffs' escalation in workplace efforts throughout this time frame is demonstrated within the wage statement for the payroll period of April 21, 2023, to May 4, 2023 (the "April Wage Statement").  A true and correct copy of the April Wage Statement is attached hereto, made a part hereof, and marked as "**Exhibit A.**"

34.     Specifically, the April Wage Statement demonstrates that Ms. Leberman worked no less than 96.60 hours and Ms. Lyons worked no less than 96.23 hours within the two-week period. *See* **Exhibit A**.

35.     Further, the April Wage Statement reflects that Plaintiffs were compensated only at their base rate of pay for these hours and were not paid the overtime premium for their hours worked over 40 in a seven-day period.  *See* **Exhibit A**.

36.     Plaintiffs protested the lack of overtime wages to Mr. Zaal personally who erroneously stated that Plaintiffs were "1099" and refused to discuss the matter further.

37.     Subsequently, from May 2023 to July 2023, Plaintiffs' workload increased, and Plaintiffs dedicated approximately 80 to 90 hours per week to Defendants' operations.

38.     However, despite the clear occurrence of overtime-eligible hours, Defendants refused to compensate Plaintiffs at the overtime premium rate of pay for their hours worked in excess of 40 in violation of the FLSA and the MWA.

**B.     Defendants Unlawfully Withheld Wages from Plaintiffs in Violation of the WPCL.**

39.     In or around March 2023, Defendants purchased a substantially sized recreational vehicle (the "RV") as well as a pick-up truck (to tow the RV) (the "Truck") to be utilized by

Plaintiffs for the Ghost Tours.

40.    However, in operating the RV and Truck, Plaintiffs and their respective customers regularly observed that the Truck was not large enough to tow the RV, and it constituted a clear and present safety danger to all involved.

41.    So much so, guests often remarked to Ms. Leberman that the transportation set-up was a "death trap."

42.    Out of fear for their safety, Plaintiffs requested Defendants to provide equipment that was more specifically suited for travel and towing.

43.    In response to the above, Mr. Zaal responded to Plaintiffs that they could terminate their workplace relationship effective immediately and threatened that in such a circumstance Plaintiffs would be responsible for reimbursing Defendants for the entirety of the RV and the Truck.

44.    Plaintiffs rebuffed this otherwise inherently and patently unfair transaction and requested an alternative to losing their jobs.

45.    In this vein, Defendants traded in the RV for a smaller sized recreational vehicle.

46.    Defendants then approached Plaintiffs and indicated that in exchange for maintaining their employment and trading in the RV, Defendants would deduct the difference in value between the previous RV and the smaller RV (which Defendants approximated to be $10,000.00) from Plaintiffs' paychecks.

47.    In furtherance of this, Defendants began making additional unlawful deductions from Plaintiffs' paychecks and specifically, $271.00 from Ms. Leberman and $369.00 from Ms. Lyons per pay period (the "Wage Deduction Practice").

48.    Further, Defendants included other expenses—unknown to Plaintiffs—within the

scope of these deductions.

49.    This significantly confused Plaintiffs, and Plaintiffs could not identify, nor did they authorize, Defendants to make deductions of these amounts.

50.    Ultimately, Defendants utilized their position of power to unlawfully bill Plaintiffs for items and expenses that Defendants have refused to make clear to this date.

51.    As of July 9, 2023, and without any warning, Defendants, absent any form of notification, locked Plaintiffs out of their operating systems and therefore fired Plaintiffs.

<u>**COUNT I**</u>
**FAILURE TO REMIT OVERTIME WAGES**
**IN VIOLATION OF THE FLSA**
**29 U.S.C. § 201, *et seq*.**
*Amanda Leberman and Karle Lyons v. Zaal Venture Corp.,*
*US Ghost Adventures, LLC, and Lance Zaal*

52.    Plaintiffs incorporate the above paragraphs, as if fully set forth at length herein.

53.    Prefatorily, the FLSA mandates two minimum rates of pay for time "employees" spend dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  29 U.S.C. §§ 206, 207.

54.    Relevant here, the FLSA establishes a heightened rate of one hundred fifty percent multiplied by the employee's base rate of pay for any hours worked in excess of 40 within a seven-day period, commonly known as "overtime" or "time and a half" pay.  29 U.S.C. § 207.

55.    29 U.S.C. § 206 governs the minimum rate of pay and provides, in relevant part:

(a) *Employees engaged in commerce. . .* Every employer shall pay to each of their employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates:
(1) except as otherwise provided in this section, not less than—
(C) $7.25 an hour, beginning 25 months after that 60th day[.]

29 U.S.C. § 206(a)(1)(C).

56.    29 U.S.C. § 207 governs the heightened rate of overtime pay and provides:

(a) Employees engaged in interstate commerce; additional applicability to employees pursuant to subsequent amendatory provisions.
(1) Except as otherwise provided in this section, no employer shall employ any of their employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, **for a workweek longer than forty hours** unless such employees receives compensation for their employment in excess of the hours above specified at a rate **not less than one and one-half times the regular rate at which he is employed**.

29 U.S.C. § 207(a)(1) (emphasis added).

57.    The minimum pay mandates are incumbent upon "employers" who through the course of their business practices are "engaged in commerce."  29 U.S.C. §§ 203(d), (s)(1).

58.    29 U.S.C. § 203(d) delineates the definition of an employer as follows:

"Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d).

59.    The term "commerce" is specifically defined to include activities such as, "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

60.    Further, 29 U.S.C. § 203 identifies when an organization engages in "commerce" sufficient to trigger the FLSA as:

"Enterprise engagement in commerce or in the production of goods for commerce" means an enterprise that (A)(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (ii) is an enterprise whose annual gross volume of sales made or business done is not less than

$500,000.

29 U.S.C. § 203(s)(1).

61.    In further elaboration of "commerce," the Third Circuit recognized in *Marshall v.*
*Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982) that an employer's use of out-of-state manufactured
equipment which the employer transported in-state for its operations was sufficient to find the
employer was an "enterprise engaged in commerce" pursuant to the FLSA.

62.    An "employee" is defined within 29 U.S.C. § 203(e)(1) which states in relevant
part: "Except as provided in paragraphs (2), (3), and (4), the term 'employee' means any individual
employed by an employer."

63.    The definition of "employee" is also recognized as "exceedingly broad" as to
properly effectuate of the remedial purposes of the FLSA. *Safarian v. Am. DG Energy Inc.*, 622
F. App'x 149, 151 (3d Cir. 2015) (citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)).

64.    29 U.S.C. § 203(g) is to be read in conjunction with 29 U.S.C. § 203(e)(1) and
defines "employ" as "to suffer or permit to work." 29 U.S.C. § 203(g).

65.    To further aid in evaluating whether an individual constitutes an "employee" within
the FLSA, the Third Circuit examines the "economic reality" surrounding the workplace
relationship and utilizes six factors in reaching a determination as to the individual's employment
status:

> 1) the degree of the alleged employer's right to control the manner
> in which the work is to be performed; 2) the alleged employee's
> opportunity for profit or loss depending upon their managerial skill;
> 3) the alleged employee's investment in equipment or materials
> required for their task, or their employment of helpers; 4) whether
> the service rendered requires a special skill; 5) the degree of
> permanence of the working relationship; 6) whether the service
> rendered is an integral part of the alleged employer's business.

*Martin,* 949 F.2d at 1293 (quoting *Donovan v. DialAmerica Mktg., Inc.,* 757 F.2d 1376, 1382 (3d Cir. 1985)).

**A.    Defendants are "Employer[s]" Pursuant to 29 U.S.C. § 203.**

66.    Defendants extended positions to Plaintiffs with specified duties and worksites.

67.    Defendants also possessed ultimate authority and control over Plaintiffs and instructed Plaintiffs to perform certain tasks for the financial benefit of Defendants.

68.    At all times relevant hereto, Defendants exercised a position of power and authority over Plaintiffs begetting that of "employer" role in the relationship.

69.    At all times pertinent hereto, Defendants also controlled the general terms and conditions of Plaintiffs' workplace duties, dictated Plaintiffs' compensation structure and scheme, and mandated the wage keeping practices that Plaintiffs were subjected to as a condition of employment.

70.    As a corporate entity responsible for the acts of their employees and/or agents acting withing the scope of their authority, Defendants "permitted" Plaintiffs to work and thus "employed" Plaintiffs per 29 U.S.C. § 203(g).

71.    As such, Defendants were "employer[s]" pursuant to 29 U.S.C. § 203(d) vis-à-vis Plaintiffs and are therefore liable for violations of the FLSA.

**B.    Defendants ZVC and USGA are "Enterprise[s] Engaged in Commerce" Pursuant to 29 U.S.C. § 206.**

72.    Upon information and belief, Defendants purchased materials, supplies, and equipment necessary and integral for their business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for their business operations within the Commonwealth of Pennsylvania.

73.    Additionally, as part of their routine business practice, Defendants transmitted and

received payments and credits from out-of-state venders by and through the use of the internet, digital payment processing services that traverse state lines, and through interstate mail via the United States Postal Service.

74.    Therefore, Defendants regularly engaged in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

75.    Upon information and belief, Defendants have an annual dollar volume in sales in excess of $500,000.00 given the nature, size, scope, industry, and frequency of services that they have effectuated throughout Pennsylvania.

76.    Therefore, Defendants satisfy the second prong of 29 U.S.C. § 206(s)(1)(A)(i).

77.    Accordingly, Defendants are "enterprise[s] engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

78.    Given Defendants' status as "employer[s]," Defendants were mandated to comply with the minimum wage, overtime rate of pay, and record keeping requirements of the FLSA pursuant to 29 U.S.C. §§ 206, 207, and 211.

**C.    Plaintiffs Were "Employee[s]" Within the Scope of 29 U.S.C. § 203.**

79.    The FLSA defines "employee" to include any individual "employed by an employer" and excludes certain circumstances that are inapplicable to the instant facts.  29 U.S.C. § 203(e)(1).

80.    At all times relevant hereto, Plaintiffs agreed to contribute their time and energy to complete meaningful workplace duties for the financial benefit of Defendants.

81.    Plaintiffs agreed to complete these duties in exchange for financial remuneration, and Plaintiffs' completion of these duties was never met with objection from Defendants.

82.    Given Defendants' lack of objection to Plaintiffs' completion of duties, Defendants permitted Plaintiffs to work within the definition of "employ" pursuant to 29 U.S.C. § 203(g).

83.     Additionally, aided by the six factors enumerated within *Donovan*, delineated above, it becomes even more evident that Plaintiffs were "employees" within the purview of 29 U.S.C. § 203(e)(1).

84.     Defendants exerted significant control over the manner in which Plaintiffs performed their workplace duties.

85.     Defendants delineated the methodologies involved in the completion of Plaintiffs' duties, the rate of productivity and the speed at which Plaintiffs were to complete their tasks, and designated the specific locations in which Plaintiffs were to perform their tasks.

86.     Plaintiffs possessed no meaningful opportunity for profit nor any financial risk of loss depending on their skill given they were compensated at a determined hourly rate; all the compensation that Defendants disbursed to Plaintiffs were derived from hours recorded by Defendants and their wage payment practices, and Plaintiffs were dependent on this scheme of compensation for their pay.

87.     The completion of Plaintiffs' workplace tasks did not require any talents unique to Plaintiffs or that were uncommon outside a traditional "Content Creator" position.

88.     The workplace duties that Plaintiffs completed were an integral component of Defendants' operations.

89.     As the factors above readily illustrate, the reality of the circumstances surrounding Plaintiffs' and Defendants' interactions plainly indicate that Plaintiffs were "employee[s]" for Defendants within the scope of 29 U.S.C. § 203.

**D.    Plaintiffs Were Denied Overtime Rates of Pay Pursuant to 29 U.S.C. § 207.**

90.     At all times relevant hereto, Defendants were mandated to pay Plaintiffs one hundred fifty percent of their corresponding base rate of pay for any time worked beyond forty hours in a seven-day period. 29 U.S.C. § 207(a)(1).

91.     A term of Ms. Leberman's employment was that she would be paid at an hourly rate of $20.19.  Therefore, Ms. Leberman's overtime rate of pay was $30.28 per overtime hour.

92.     Further, Ms. Lyons' base rate of pay was $20.00 per hour and her overtime rate of pay was $30.00 per overtime hour.

93.     As set forth above, Plaintiffs routinely and regularly worked in excess of 40 hours per week from April of 2023 to July of 2023.

94.     However, Defendants failed to compensate Plaintiffs their respective overtime rates of pay in recompense for the overtime-eligible hours from April of 2023 to July of 2023 in violation of the FLSA.

95.     Further, Defendants unlawfully deducted funds by way of the Wage Deduction Practice from Plaintiffs' paychecks that constituted overtime wages and deprived Plaintiffs of overtime pay in violation of the FLSA.

**E.    Plaintiffs are Entitled to Liquidated Damages, Attorneys' Fees, and Costs.**

96.     29 U.S.C. § 216(b) of the FLSA provides that when an employer violates 29 U.S.C. § 207(a)(1), an employee may collect liquidated damages in an amount equal to the amount of wages that are due and owing and, additionally, an award of attorneys' fees.

97.     An award of liquidated damages pursuant to the FLSA is not penal in nature but rather is viewed as a compensatory remedy.  *Martin v. Selker Bros.*, 949 F.2d 1286, 1299 (3d Cir. 1991) (citing *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572, 583-84 (1942)).

98.     Indeed, the Supreme Court of the United States has opined on the compensatory nature of this remedy, describing it as compensation for the "workman's pay which might result in damages too obscure and difficult of proof for estimate other than by liquidated damages." *Schonewolf v. Waste Mgmt., Inc.*, 2018 U.S. Dist. LEXIS 44139, *11 (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08 (1945)).

99.    Furthermore, the award of liquidated damages is mandatory unless an employer can make a "showing of good faith and reasonable grounds for its conduct." *Martin*, 949 F.2d at 1299.

100.    Defendants' willful and knowing actions were the direct and proximate cause that resulted in violations of Plaintiffs' rights under the FLSA, deprivation of the statutorily required overtime rates of pay, and the total amount of Plaintiffs' damages.

101.    Defendants are unable to meet their burden of establishing "good faith and reasonable grounds" for their violation of Plaintiffs' rights, as demonstrated by Defendants' willful animus in flagrantly disregarding their responsibilities and obligations as employers.

102.    Therefore, Defendants are liable to Plaintiffs for actual damages (lost wages), liquidated damages, as well as reasonable attorneys' fees, costs, and expenses pursuant to 29 U.S.C. § 216(b).

103.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiffs have suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

104.    WHEREFORE, Plaintiffs, Amanda Leberman and Karle Lyons, seek the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

### COUNT II
### FAILURE TO PAY OVERTIME WAGES IN
### VIOLATION OF THE MWA
### 43 P.S. § 333.101, *et seq.*
*Amanda Leberman and Karle Lyons v. Zaal Venture Corp.,*
*US Ghost Adventures, LLC, and Lance Zaal*

105.    Plaintiffs incorporate the above paragraphs, as if fully set forth at length herein.

106.    The MWA, much like its federal law counterpart in the FLSA, mandates a heightened rate of pay for any hour worked in excess of 40 hours per work week.  *See* 43 P.S. § 333.104.

107.    Specifically, Section 4(c) controls the premium compensation rate for overtime hours and states, in relevant part, that "[e]mployees shall be paid for overtime not less than one and one-half times the employee's regular rate as prescribed in regulations promulgated by the secretary…." 43 P.S. § 333.104(c).

## A.    Defendants Are "Employer[s]" Under the MWA.

108.    The MWA defines "employer[s]" to include "any association, corporation, individual, partnership," or "any person or group or persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 P.S. § 333.103(g).

109.    The definition of "employer" is expansively construed within the MWA to render a corporate entity, as well as its corporate officers, liable for violations of the MWA. *See Schneider v. IT Factor Prods.*, 2013 U.S. Dist. LEXIS 173583, *13 (E.D. Pa. Dec. 10, 2013) (citing *Scholly v. JMK Plastering, Inc.*, No. Civ.A.07-4998, 2008 U.S. Dist. LEXIS 49958, 2008 WL 2579729, at *4 (E.D. Pa. June 25, 2008)).

110.    As discussed above, Defendants extended positions to Plaintiffs with specified duties and pay rates. Defendants also possessed ultimate authority and control over Plaintiffs and instructed Plaintiffs to perform certain tasks for the financial benefit of Defendants. At all times relevant hereto, Defendants exercised a position of power and authority over Plaintiffs begetting that of an "employer" role in the relationship.

111.    Defendants also controlled the general terms and conditions of Plaintiffs' workplace duties, dictated their compensation structure and scheme, and mandated the wage keeping practices that Plaintiffs were subjected to as a condition of their employment.

112.    As a corporate entity responsible for the acts of their employees and/or agents acting withing the scope of their authority, Defendants "permitted" Plaintiffs to work and thus "employed" Plaintiffs per 43 P.S. § 333.103(f).

113.    As such, Defendants are "employer[s]" pursuant to 43 P.S. § 333 and are therefore liable for violations of the MWA.

**B.    Plaintiffs Are "Employee[s]" Under the MWA.**

114.    The MWA defines "employe[e]" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

115.    The definition of "employ" is broadly defined as "to suffer or to permit to work." 43 P.S. § 333.103(f).

116.    At all times relevant hereto, Defendants possessed and, in fact, exercised their right to control Plaintiffs' job duties, namely with respect to their decisions and directives concerning where Plaintiffs would perform their duties, the content Plaintiffs would create, the methodology which Plaintiff would use, and the customers Plaintiffs would assist in touring the related haunted locations.

117.     Defendants also exerted significant control over the manner in which Plaintiffs performed their workplace duties.  Defendants delineated the methodologies involved in the completion of Plaintiffs' duties, denoted their expected rate of productivity, and dictated the speed at which Plaintiffs were to complete their tasks.

118.     Plaintiffs had no personal financial investment in Defendants' operations.  Further, Plaintiffs did not have any opportunity to obtain extra renumeration based on the exercise of managerial skill.  Plaintiffs never worked in a managerial or supervisory capacity.

119.    Instead, Plaintiffs were compensated at a determined hourly rate in their respective roles.  All the compensation that was disbursed to Plaintiffs was derived from hours they recorded, and Plaintiffs were dependent on Defendants' timekeeping machinations for their pay.

120.    Further, Plaintiffs did not utilize their own equipment while working for Defendants, and Defendants supplied Plaintiffs with the supplies and equipment necessary for the

performance of their job duties.

121.    Nonetheless, the workplace duties which Plaintiffs completed were an integral component of Defendants' operations, as evidenced by the amount of overtime and energy that Plaintiffs expended during their employment with Defendants.

122.    Finally, Plaintiffs were completely dependent on Defendants to provide the work for Plaintiffs to perform.  Defendants operated the business, and such business was required in order for Plaintiffs to perform their job duties.

123.    Therefore, Plaintiffs are "employees" for purposes of the MWA.

## C.    Defendants Failed to Compensate Plaintiff with Their Overtime Wages.

124.    Given Defendants' status as "employer[s]" and Plaintiffs' status as "employee[s]," Defendants were obligated to comply with the overtime rate of pay requirements of the MWA.

125.    That is, at all times hereto, Defendants were mandated to pay Plaintiffs one and one-half times their corresponding base rates of pay for any time worked beyond 40 hours in a seven-day period.  43 P.S. § 333.104(c).

126.    As previously averred, Plaintiffs routinely and regularly worked in excess of 40 hours per week from April 2023 to July 2023.

127.    Consequently, Plaintiffs engaged in hours of work that Defendants were legally obligated to compensate them at the overtime rate of pay.

128.    Instead, as averred above, Defendants refused to compensate Plaintiffs at their overtime rates of pay and deprived Plaintiffs of their lawfully owed wages.

129.    Further, Defendants unlawfully deducted funds through the Wage Deduction Practice from Plaintiffs' paychecks that constituted overtime wages and further deprived Plaintiffs of overtime pay in violation of the MWA.

130.    The only conceivable exception to Defendants in this case is located within the

regulation at 34 Pa. Code § 231.22(c), which permits deductions that "are known to the employee and agreed to by the employee at the time of hiring.  In addition, adjustments to the deductions and allowances shall be made known to the employee prior to the making of the adjustments."

131.    As averred hereinabove, Plaintiffs never consented or otherwise agreed to the Wage Deduction Practice.  Assuming, arguendo, Defendants had a factual basis to believe that Plaintiffs owed Defendants any type of reimbursement, Defendants could not unilaterally recoup said amounts by making deductions to Plaintiffs' paychecks.

132.    Therefore, Defendants violated 43 P.S. § 333.104(c) in failing to pay Plaintiffs overtime wages and Defendants did not have a legal exemption or deduction that could excuse this failure.

**D.    Plaintiffs Are Entitled to Actual Damages, Attorneys' Fees, and Costs.**

133.    In addition, the MWA provides for the recovery of attorneys' fees and costs when an employer fails to pay an employee in accordance with 43 P.S. §§ 333.112 and 333.113.

134.    Defendants are liable to Plaintiffs for actual damages (lost wages), as well as reasonable attorneys' fees, costs, and expenses pursuant to 43 P.S. § 333.113.

135.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiffs have suffered tangible economic and pecuniary loss in forms including, but not limited to, the deprivation of lawfully owed wages.

136.    WHEREFORE, Plaintiffs, Amanda Leberman and Karle Lyons, seek the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## COUNT III
### FAILURE TO REMIT WAGES
### IN VIOLATION OF THE WPCL
### 43 P.S. § 260.1, *et seq.*
*Amanda Leberman and Karle Lyons v. Zaal Venture Corp.,*
*US Ghost Adventures, LLC, and Lance Zaal*

137.    Plaintiffs incorporate the above paragraphs, as if fully set forth at length herein.

138.    The WPCL provides the employee with a statutory remedy to enforce their rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

139.    The contract between the employer and the employee governs the determination of the specific wages earned by the employee. *Id.* (citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138 (3d Cir. 1986)).

140.    This statutory remedy created by the WPCL creates both a private cause of action for any employee to whom "any type of wages" are owed and bestows "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

141.    "To recover under the WPCL, an employee must aver a contractual entitlement to compensation from wages and a failure to pay that compensation." *Carlson v. Qualtek Wireless, LLC*, 2023 U.S. App. LEXIS 20695, *10 (internal citations and quotations omitted).

142.    Further, an employee must establish "an implied oral contract between the employee and the employer." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 954 (citing *De Asencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003)).

143.    The WPCL defines an employer to include every person, association, or corporation and, further, "any agent or officer of any [corporation] employing any person in this Commonwealth."  43 P.S. § 260.2a.

144.    Defendants are a business association and/or corporation that employs individuals,

including Plaintiffs, within the geographical boundaries of the Commonwealth of Pennsylvania and, therefore, are employers under 43 P.S. § 260.2a.

145.    As averred previously, Defendants and Plaintiffs effectuated an employment relationship, whereby Plaintiffs were employees.  This factual reality remains true for the purposes of the WPCL as well.

146.    The WPCL defines "wages" to include all "earnings of an employee" and further includes within this definition any "fringe benefits of wage supplements."  43 P.S. § 260.2a.

**A.    Plaintiffs and Defendants Engaged in a Contract for Plaintiffs' Employment.**

147.    In October 2022 (for Leberman) and January 2023 (for Lyons), Plaintiffs engaged in an employment relationship with Defendants wherein Plaintiffs would provide services and Defendants, following receipt of these services, would compensate Plaintiffs on an hourly basis of $20.19 (for Leberman) and $20.00 (for Lyons) per hour.

148.    Subsequently, Plaintiffs and Defendants accepted the terms of the employment contracts.

149.    Plaintiffs' and Defendants' acceptance is further evidenced by the fact Plaintiffs began performing various workplace activities and Defendants began compensating Plaintiffs with wages.

**B.    Plaintiffs Have Accrued Owed Compensation from Defendants in the Form of "Wages."**

150.    Plaintiffs have sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a.

151.    From March 2023 to July 2023, Plaintiffs engaged in the performance of workplace duties for Defendants that was, per the terms of the terms of the employment contracts, to be compensated at an hourly rate of pay commensurate with the amount of time Plaintiffs expended in performance of said duties.

**C.     Defendants Have Failed to Remit Plaintiffs Their Owed Wages**

152.     However, and despite the accrual and entitlement to wages, Defendants unilaterally began making deductions from Plaintiffs' paychecks in the amounts of $271.00 per pay period (for Leberman) and $396.00 per pay period (for Lyons).

153.     These deductions represented, in no short order, the unlawful taking of wages that Defendants were not lawfully authorized to withdraw.

154.     To date, Plaintiffs have not been compensated these wages.

**D.     An Award of Liquidated Damages is Appropriate Given Defendants' Failure to Provide Plaintiffs with Their Wages.**

155.     Section 260.9a(b), in conjunction with Section 260.10 of the WPCL permits an employee to institute an action for wages and further liquidated damages.   These statutory provisions state as follows:

> Actions by an employe, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employes for and in behalf of himself or themselves and other employes similarly situated, or such employe or employes may designate an agent or representative to maintain such action or on behalf of all employes similarly situated.   Any such employe, labor organization, party, or their representative shall have the power to settle or adjust their claim for unpaid wages.

43 P.S. §260.9a(b).

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable, or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe shall be entitled to claim, in addition, as liquidated damages an

24

> amount equal to twenty-five percent (25%) of the total amount of
> wages due, or five hundred dollars ($500), whichever is greater.

43 P.S. § 260.10.

156.    Per the above statutory provisions, Defendants were legally obligated to provide

Plaintiffs with their owed wages.  Instead, Defendants elected to unilaterally deduct arbitrary

amounts from Plaintiffs' paychecks.

157.    As such, Defendants have violated 43 P.S. § 260.10 in failing to pay owed wages

to Plaintiffs.

158.    Defendants' actions described hereinabove were the direct and proximate cause that

resulted in violations of Plaintiffs' rights under the WPCL, deprivation of their statutory entitlement

to accrued wages, and the total amount of Plaintiffs' damages.

159.    Consequently, Plaintiffs are entitled to an aware of liquidated damages pursuant to

43 P.S. § 260.10.

**E.    Plaintiffs Are Entitled to Reasonable Attorneys' Fees and Costs Incurred in Pursuit
of Their Unpaid Wages and Bonus.**

160.    In addition, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable

judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees:

> The court in any action brought under this section shall, in addition
> to any judgment awarded to the Plaintiffs or Plaintiffs, allow costs
> for reasonable attorneys' fees of any nature to be paid by the
> Defendants.

43 P.S. § 260.9a(f).

161.    As such, Plaintiffs are also entitled to reasonable attorneys' fees pursuant to 43 P.S.

§ 260.9a(f) that were incurred as a result of redressing Defendants' conduct described hereinabove.

162.    As a direct and proximate result of Defendants' conduct described hereinabove,

Plaintiffs have suffered tangible economic and pecuniary loss in forms including, but not limited

to, the deprivation of lawfully owed wages.

163.    WHEREFORE, Plaintiffs, Amanda Leberman and Karle Lyons, seek the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT IV**
**UNJUST ENRICHMENT**
**UNDER PENNSYLVANIA COMMON LAW**

164.    Plaintiffs incorporate the above paragraphs, as if fully set forth at length herein.

165.    Pennsylvania recognizes the equitable doctrine of unjust enrichment wherein the courts may imply a "quasi contract" and require a defendant to compensate the plaintiff for the value of the benefit conferred.  *Curley v. Allstate Ins. Co.*, 289 F. Supp. 2d 614, 619 (E.D. Pa. 2003) (citing *Crawford's Auto Center v. State Police*, 655 A.2d 1064, 1070 (Pa. Cmwlth. 1995)).

166.    A plaintiff must show three elements to prove a cause of action of unjust enrichment: (1) a benefit conferred on a defendant by the plaintiff; (2) appreciation of such benefits by the defendant; and (3) acceptance and retention of such benefits by the defendant under such circumstances that it would be inequitable for the defendant to retain the benefit without paying its value.  *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999) (citing *Schenck v. K.E. David, Ltd.*, 666 A.2d 327 (Pa. Super. 1995)).

**A.    Plaintiffs Conferred a Benefit Upon Defendants by Performing Their Workplace Duties and Defendants Appreciated the Benefit Plaintiffs Conferred.**

167.    Plaintiffs conferred a benefit to Defendants by performing workplace duties and devoting hours of work that directly resulted in the financial and operational benefit of Defendants' enterprise.

168.    Indeed, Plaintiffs' performance of work hours for which they were never compensated, as detailed and described above, constitutes a benefit that was directly conferred to Defendants.

**B.      Defendants Accepted the Benefits Plaintiffs Conferred and it is Inequitable for Defendants to Retain Those Benefits Without Compensating Plaintiffs.**

169.    Defendants retained and accepted the benefit of Plaintiffs' labor and services without issue, objection, or delay.

170.    By accepting Plaintiffs' labor and services and not paying Plaintiffs for their overtime premium rate of pay for hours worked above and beyond 40 in a seven-day period and unilaterally taking deductions by way of the Wage Deduction Practice, Defendants have been unduly enriched.

171.    As a matter of justice, it would be manifestly unjust and inequitable for Defendants to retain the benefit of that labor and services without paying Plaintiffs due compensation.

172.    Defendants' actions described hereinabove were the direct and proximate cause of Defendants' unjust enrichment and the damages they owe Plaintiffs for retaining a benefit without paying for its value.

173.    As a direct and proximate result of Defendants' conduct described hereinabove, Plaintiffs have suffered tangible economic losses resultant from the deprivation of lawfully owed wages, and they are entitled to recoup the amount of the benefit they conferred upon Defendants and which Defendants unjustly retained.

174.    WHEREFORE, Plaintiffs, Amanda Leberman and Karle Lyons, seek the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**JURY DEMAND**

175.    Plaintiffs demand a trial by jury on all matters so triable.

***AD DAMNUM* AND PRAYER FOR RELIEF**

176.    For the above-stated reasons, Plaintiffs, Amanda Leberman and Karle Lyons, respectfully request this Honorable Court to enter judgment in their favor, and against Defendants,

Zaal Venture Corp., US Ghost Adventures, LLC, and Lance Zaal and pray for relief as follows:

    a.    Declare and find that Defendants committed one or more of the following acts:

        i.    Violated provisions of the FLSA in failing to compensate Plaintiffs at their overtime rate of pay;

        ii.    Violated provisions of the MWA in failing to compensate Plaintiffs at their overtime rate of pay; and

        iii.    Violated provisions of the WPCL in failing to compensate Plaintiffs at a regular rate of pay for their work performed through unlawfully deducting their wages;

        iv.    Were unjustly enriched at Plaintiffs' expense;

    b.    Award unpaid overtime wages and unpaid wages at Plaintiffs' hourly rates and/or overtime rates of pay and other compensation denied or lost to Plaintiffs to date by reason of the unlawful acts described in this Complaint;

    c.    Award liquidated damages on all compensation due and accruing from the date such amounts were due in equal amounts pursuant to Plaintiffs' unpaid minimum and overtime wages pursuant to the FLSA and/or the WPCL;

    d.    Award pre-judgment and post-judgment interest where accorded by law;

    e.    Award reasonable attorneys' fees and costs of suit incurred prosecuting these claims;

    f.    Award injunctive and other equitable relief as provided by law; and

    g.    Award such other and further relief as this Court deems just, equitable, and proper.

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: April 1, 2025                By: _____
                                   Kyle H. Steenland (Pa. I.D. No. 327786)
                                   Erik M. Yurkovich (Pa. I.D. No. 83432)
                                   Cynthia A. Howell (Pa. I.D. No. 325662)

                                   The Workers' Rights Law Group, LLP
                                   Foster Plaza 10
                                   680 Andersen Drive, Suite 230
                                   Pittsburgh, PA 15220
                                   Telephone: 412.910.9592
                                   Facsimile: 412.991.7510
                                   kyle@workersrightslawgroup.com
                                   erik@workersrightslawgroup.com
                                   cynthia@workersrightslawgroup.com

                                   *Counsel for Plaintiffs, Amanda Leberman and Karle Lyons*

# EXHIBIT A



**Off Cycle Payroll Pay day: 05/01/2023**

| Employee Information | Employment | | Earnings | | | | Employee Taxes | Employer Taxes | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Employee Type | Payment | Description | Hours | Rate | Total | | Description | Amount | Description | Amount |
| Lyons, Karle<br><br>US Ghost Adventures<br><br>119 Bay Mist Drive, Erie, PA 16505 | Salary/No overtime | Direct Deposit | Gross | -- | -- | $0.00 | $0.00 | Total | $0.00 | Reimburse ments | $396.26 |
| | | | | | | | | | | Check Amount | $396.26 |
| | | | | | | | | | | Employer Cost | $396.26 |

**Payroll period: 04/21/2023 - 05/04/2023 Pay day: 05/12/2023**

| Employee Information | Employment | | Earnings | | | | Employee Taxes | Employer Taxes | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Employee Type | Payment | Description | Hours | Rate | Total | | Description | Amount | Description | Amount |
| Leberman, Amanda | Salary/No overtime | Direct Deposit | Regular | 96.60 | $20.19 | $1,950.58 | $393.67 | Social Security | $120.94 | Net Pay | $1,285.91 |

| Employee Information | Employment | | Earnings | | | | Employee Taxes | Employer Taxes | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Employee Type | Payment | Description | Hours | Rate | Total | | Description | Amount | Description | Amount |
| US Ghost Adventures 1670 Winslow dr, Erie, PA 16509 | | | Gross | -- | -- | $1,950.58 | | Medicare | $28.29 | Check Amount | $1,285.91 |
| | | | | | | | | Total | $149.23 | Employer Cost | $2,099.81 |
| Lyons, Karle US Ghost Adventures 119 Bay Mist Drive, Erie, PA 16505 | Salary/No overtime | Direct Deposit | Regular | 96.23 | $20.00 | $1,924.66 | $387.50 | Social Security | $119.33 | Net Pay | $1,141.16 |
| | | | Gross | -- | -- | $1,924.66 | | Medicare | $27.91 | Check Amount | $1,141.16 |
| | | | | | | | | FUTA | $3.38 | Employer Cost | $2,148.84 |
| | | | | | | | | PA UC Tax Employer Contribution | $73.56 | | |
| | | | | | | | | Total | $224.18 | | |
| **Payroll Totals** | | | Regular | 192.83 | $20.10 | $3,875.24 | $781.17 | Social Security | $240.27 | Net Pay | $2,427.07 |
| | | | Gross | -- | -- | $3,875.24 | | Medicare | $56.20 | Check Amount | $2,427.07 |
| | | | | | | | | FUTA | $3.38 | Employer Cost | $4,248.65 |
| | | | | | | | | PA UC Tax Employer Contribution | $73.56 | | |
| | | | | | | | | Total | $373.41 | | |

**Off Cycle Payroll Pay day: 05/15/2023**

| Employee Information | Employment | | Earnings | | | | Employee Taxes | Employer Taxes | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Employee Type | Payment | Description | Hours | Rate | Total | | Description | Amount | Description | Amount |
| There is no activity to show for the filters and time range selected. | | | | | | | | | | | |

**Bonus Payroll Pay day: 05/24/2023**

| Employee Information | Employment | | Earnings | | | | Employee Taxes | Employer Taxes | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Employee Type | Payment | Description | Hours | Rate | Total | | Description | Amount | Description | Amount |
| There is no activity to show for the filters and time range selected. | | | | | | | | | | | |

**Bonus Payroll Pay day: 05/26/2023**

| Employee Information | Employment | | Earnings | | | | Employee Taxes | Employer Taxes | | Totals | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Employee Type | Payment | Description | Hours | Rate | Total | | Description | Amount | Description | Amount |
| There is no activity to show for the filters and time range selected. | | | | | | | | | | | |

## **VERIFICATION**

I, Amanda Leberman, have read the foregoing allegations in the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief. I understand that this verification is made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: 04 / 01 / 2025

_____
Amanda Leberman

## **VERIFICATION**

I, Karle Lyons, have read the foregoing allegations in the foregoing Complaint in Civil Action and verify that the statements therein are correct to the best of my personal knowledge, information and/or belief.  I understand that this verification is made subject to the penalties of 18 Pa. C.S. § 4904, relating to unsworn falsification to authorities, which provides that if I knowingly make false averments, I may be subject to criminal penalties.

Dated: _04 / 01 / 2025_

_____
Karle Lyons

## **CERTIFICATE OF COMPLIANCE**

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

Submitted by: <u>Attorney for Plaintiffs</u>

Signature: <u>*Kyle H. St*</u>

Name: <u>Kyle H. Steenland</u>

Attorney No. (if applicable): <u>327786</u>

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 1, 2025, a true a correct copy of the foregoing Complaint in Civil

Action was served by the following methods as delineated below:

*Via Electronic Mail*

Marla N. Presley, Esq.
Danielle M. Parks, Esq.
Jackson Lewis P.C.
1001 Liberty Avenue, Suite 1000
Pittsburgh, PA 15222
Marla.Presley@jacksonlewis.com
Danielle.Parks@jacksonlewis.com

*Counsel for Defendants*

By: _____
Kyle H. Steenland, Esq.
Pa. I.D. No. 327786